UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-04425-KK-MBKx** | Date: | August 7, 2026 |

| | |
|---|---|
| Title: | ***Engels Josue Mendez Cruz v. Andre Quinones et al.*** |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **(In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 3]**

## I.
## INTRODUCTION

On August 6, 2026, petitioner Engels Josue Mendez Cruz ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Andre Quinones, David Venturella, Joseph B. Edlow, Markwayne Mullin, and Todd Blanche (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Motion for Temporary Restraining Order, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 3, Motion ("Mot."); Dkt. 7.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II.
## BACKGROUND

### A.    RELEVANT FACTS

Petitioner is alleged to be a citizen and national of Nicaragua. Pet. at 17. In Nicaragua, police and parapolice confronted, beat, and threatened to kill Petitioner because he participated in protests against the Nicaraguan government. Id. ¶ 4. On one occasion, Nicaraguan police clubbed, kicked, and beat Petitioner with the butts of their guns, leaving him with a fractured arm. Id. In

September 2021, Petitioner fled Nicaragua for the United States after the police came to his house searching for him.  Id.

At some point thereafter, Petitioner arrived in the United States and was detained by the U.S. Department of Homeland Security ("DHS").  See id.  In early October 2021, DHS released Petitioner from its custody and required him to report to the U.S. Immigration and Customs Enforcement ("ICE") San Bernardino Field Office every four months.  Id. ¶ 5.  Petitioner never missed an appointment.  Id.

On September 14, 2023, Petitioner applied for asylum.  Id. ¶ 6.  Petitioner later received work authorization based on his pending asylum application.  Id.

In April 2025, Petitioner reported for an appointment at the ICE San Bernardino Field Office and was detained without notice or a hearing, despite his full compliance with his check-in requirements.  Id. ¶ 7.  Upon Petitioner's arrest and detention, DHS initiated removal proceedings against Petitioner.  Id. ¶ 14; see also id. at 17-20.

ICE thereafter transferred Petitioner to Los Angeles, back to San Bernardino, then to Indio, California, and finally Florence, Arizona.  Id. ¶ 8.  During this time, Petitioner suffered "inhumane" conditions.  Id. ¶ 8.  For example, while in transit after his arrest, ICE officers "turned up the heat in the part of the vehicle where [Petitioner] and others were being held," causing several individuals to "nearly los[e] consciousness."  Id.  Even though Petitioner and the other detainees "begged" the officers to turn off the heat, they refused to do so and denied them food or water.  Id.  Petitioner also suffered a partial dislocation of his right hand from the handcuffs ICE placed on him.  Id. ¶ 9.  Additionally, when Petitioner arrived at the detention center in Florence, he was provided "inedible and inadequate amounts of food and contaminated water."  Id. ¶ 12.

On June 10, 2025, Petitioner received a bond hearing before an immigration judge, who ordered his release on a $5,000 bond.  Id. ¶ 15.  Petitioner was released, but ICE failed to return Petitioner's employment authorization card.  Id. ¶ 16.  Petitioner then returned to California and was placed in ICE's Intensive Supervision Appearance Program ("ISAP"), which requires he report periodically to ICE.  Id. ¶ 17.  Petitioner has fully complied with his ISAP reporting requirements.  Id.

On July 13, 2026, an immigration judge denied Petitioner's asylum application and ordered his removal to Nicaragua.  Id. ¶ 20.  On August 5, 2026, Petitioner timely filed a notice of appeal of the immigration judge's ruling.  Id. ¶¶ 20-21.

Petitioner is currently scheduled for an ISAP check-in appointment on August 10, 2026.  Id. ¶ 22.  At some point before this appointment, ICE notified Petitioner that the location for his appointment was moved from the ISAP office to the ICE San Bernardino Field Office.  Id.

## B.    PROCEDURAL HISTORY

On August 6, 2026, Petitioner filed the operative Petition against Respondents, prospectively challenging and raising the following grounds for relief:

1.    **Ground One:**  Violation of Substantive Due Process; and

      **2.**       **Ground Two:**  Violation of Procedural Due Process.

<u>Id.</u> ¶¶ 47-60.  Petitioner seeks an order (1) enjoining Respondents from re-detaining him "unless and until a hearing can be held before a neutral adjudicator to determine whether [his] re-detention would be lawful because the government has shown, by clear and convincing evidence, that there has been a material change in circumstances such that [he is] a danger or a flight risk," and (2) requiring Respondents to replace his lost employment authorization card.  <u>Id.</u> at 13.

On the same day, Petitioner filed an Ex Parte Motion for Temporary Restraining Order, seeking, on the basis of the due process claims raised in the Petition, an order enjoining Respondents from re-detaining him until further order of the Court.  Mot. at 11.  The Court converted the Ex Parte Motion for Temporary Restraining Order to the instant Motion and ordered Respondents to submit an Opposition no later than 12:00 p.m. on August 7, 2026.  Dkt. 7.

On August 7, 2026, Respondents filed an Opposition to Petitioner's Motion, arguing the Petition is unripe because Petitioner is not currently in physical detention.  Dkt. 9, Opposition ("Opp.") at 2.

This matter, thus, stands submitted.

**III.**
**<u>LEGAL STANDARD</u>**

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("<u>Winter</u> factors").  <u>See id.</u> at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the <u>Winter</u> standard."  <u>Fraihat v. U.S. Immigr. & Customs Enf't</u>, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four <u>Winter</u> factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other <u>Winter</u> factors are also met.  <u>Id.</u> at 1132.

**IV.**
**<u>THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION</u>**

**A.**      **THE LIKELIHOOD OF SUCCESS ON THE MERITS**

The likelihood of success on the merits is the most important <u>Winter</u> factor, which "is especially true for constitutional claims."  <u>Junior Sports Mags. Inc. v. Bonta</u>, 80 F.4th 1109, 1115

(9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).  Here, Petitioner is likely to succeed on the merits of his procedural due process claim.[1]

### 1.      Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause.  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings."  A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands."  United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property."  Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976).  Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057).  Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements."  Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

### 2.      Analysis

As an initial matter, the Court finds Petitioner remains "in custody under or by color of the authority of the United States."  28 U.S.C. § 2241(c)(1).  While "the chief use of habeas corpus" historically was "to seek the release of persons held in actual, physical custody in prison or jail," the imposition of "restraints not shared by the public generally . . . support[s] the issuance of habeas corpus."  Munoz v. Smith, 17 F.4th 1237, 1241 (9th Cir. 2021) (quoting Jones v. Cunningham, 371 U.S. 236, 238, 240 (1963)).  Thus, habeas relief is "not limited to immediate release from illegal custody," but is also "available . . . to attack future confinement and obtain future releases."  Pinson v. Carvajal, 69 F.4th 1059, 1070 (9th Cir. 2023) (citation modified) (quoting Preiser v. Rodriguez, 411 U.S. 475, 487 (1973)).  Here, Petitioner is subject to both ISAP reporting requirements and future discretionary detention by ICE.  See Pet. ¶ 17; 8 U.S.C. § 1226(a)(1) (authorizing ICE to "continue to detain" a noncitizen pending the completion of removal proceedings).  Notably, Respondents have not provided any credible assurance they will not rearrest or re-detain Petitioner while his appeal of the immigration judge's order is pending.  See Opp. at 2; Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (finding a procedural due process claim ripe where the government refused to provide any assurance it would not re-detain the petitioner).  Therefore,

---

[1] Because the Court finds Petitioner is entitled to relief based on his procedural due process claim, the Court need not consider Petitioner's substantive due process claim.

contrary to Respondents' assertions, Petitioner remains in Respondents' custody and may seek habeas relief to challenge his future re-detention and confinement.  See Sun v. Santacruz, No. EDCV 25-02198-JLS-JCx, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (collecting cases finding habeas relief is available to challenge re-detention); Sanchez v. Santacruz, No. CV 26-5063-FMO-KESx, 2026 WL 1915710, at *3 (C.D. Cal. June 29, 2026) (finding a petitioner subject to an order of supervision was in custody).

Additionally, applying the Mathews test, the Court finds Petitioner is likely to succeed on the merits of his claim that his re-detention without notice and a pre-deprivation hearing violates his right to procedural due process.

First, Petitioner has a substantial private interest in remaining out of immigration custody. DHS released Petitioner from immigration twice: first in October 2021, and again in June 2025 on bond.  Pet. ¶¶ 5, 15.  Petitioner's October 2021 and June 2025 releases give rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government."  Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

Moreover, while DHS's decisions to release Petitioner was discretionary, see 8 U.S.C. § 1226(a)(2), those decisions contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [release] conditions," Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").  For over three years after his first release and over one year after his second release, Petitioner has relied on this promise to live freely in the community and "form the [] enduring attachments of normal life," including living with his wife and working in California.  Morrissey, 408 U.S. at 482; see also Pet. ¶¶ 3, 15.  Thus, the length of Petitioner's release strengthens his interest in his continued freedom from detention.  See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").  In releasing Petitioner in October 2021 and again in June 2025 on bond, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community.  See 8 C.F.R. § 236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"); Pet. ¶¶ 5, 15.  Further, Petitioner has fully complied with the requirements of his prior and current releases.  Pet. ¶¶ 5, 17.  The uncontroverted evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to

prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). In contrast, without the procedural safeguard of a pre-detention hearing, ICE could, as it appears to have previously done, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in re-detaining Petitioner and the burden of a pre-detention hearing are both minimal. In fact, Respondents fail to provide any reason for Petitioner's re-detention. See generally Opp. Thus, Respondents lack any governmental interest in re-detaining Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)).

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his re-detention without notice and a pre-deprivation hearing violates his right to procedural due process, especially in light of Respondents' failure to challenge the merits of his claim. Accordingly, the first Winter factor weighs in favor of Petitioner.

## B.    THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). If a plaintiff establishes a likelihood of success on a claim alleging a constitutional violation, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023). Further, "[d]eprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, Petitioner's re-detention without notice or a pre-deprivation hearing violates his right to procedural due process. As noted, Respondents have failed to provide any assurance Petitioner

will not be re-detained at the August 10, 2026 appointment or any other future check-in.  See Opp. at 2.  Hence, Petitioner will be irreparably harmed absent relief from this Court.  See, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause"); Sun, 2025 WL 2730235, at *7 (finding irreparable harm where a petitioner had an upcoming check-in appointment and the government refused to provide any assurances it would not rearrest or re-detain the petitioner).

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C.    BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue."  Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor.  All. for the Wild Rockies, 632 F.3d at 1135.  In addition, Respondents do not assert any interest in detaining Petitioner as part of their law enforcement obligations.  See Opp. at 2.  Even so, such argument would not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends."  Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

*    *    *

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to injunctive relief.  Petitioner's continued release is necessary to maintain the status quo, which is "the last uncontested status which preceded the pending controversy."  Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).  Here, the last uncontested status is Petitioner's freedom from immigration custody absent the threat of re-detention without procedural safeguards.  See J.A.E.M., 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))).  Accordingly, an injunction prohibiting Respondents from rearresting and re-detaining Petitioner without notice or a pre-detention hearing is the appropriate form of relief.

See Sanchez, 2026 WL 1915710, at *6 (enjoining future re-detention for a petitioner previously released from physical custody); Hogarth v. Santacruz, No. EDCV 25-09472-SPG-MARx, 2025 WL 3211461, at *15 (same).

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.  Petitioner's Motion is **GRANTED**;[2]
2.  Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226(a) without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
3.  Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case; and
4.  Respondents are **ORDERED** to file a status report **no later than three (3) days from the date of this Order**, regarding their compliance with this Order.

This Order shall remain in effect until further order by the Court.  Failure to comply with this Order will result in sanctions.

Pursuant to General Order No. 05-07, further proceedings on the merits of the Petition are referred to the Magistrate Judge.  Any objections to Report and Recommendations issued by the Magistrate Judge shall be filed no later than three (3) days from the date of the Report and Recommendation.

**IT IS SO ORDERED**.

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.''" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.